**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **QUINTIS CLARK,** | **CIVIL ACTION** |
| **CHARLES SLADE, III,** | |
| **ALEXANDER GRANGER,** | |
| **JESSE MYERS,** | |
| **DONTE WEBB,** | |
| **STANLEY POSTELL,** | **NO. 23-922** |
| **HOLDEN HASTINGS,** | |
| **ISRAEL BERRIOS,** | |
| **JOSEPH ALBINO,** | |
| **KEYON LUCAS,** | |
| **OMONTAY MONROE and** | |
| **ESTES WALKER,** | |
| **Plaintiffs,** | |
| | |
| **v.** | |
| | |
| **GEORGE JUNIOR REPUBLIC,** | |
| **GEORGE JUNIOR REPUBLIC REALTY,** | |
| **GEORGE JUNIOR REPUBLIC IN** | |
| **PENNSYLVANIA,** | |
| **GEORGE JUNIOR REPUBLIC IN** | |
| **INDIANA, INC. and** | |
| **JOHN/JANE DOES 1-100,** | |
| **Defendants.** | |

**Hodge, J.**                                                                                           **March 18, 2025**

## <u>MEMORANDUM</u>

Plaintiffs Quintis Clark, Charles Slade III, Alexander Granger, Jesse Myers, Donte Webb, Stanley Postell, Holden Hastings, Israel Berrios, Joseph Albino, Keyon Lucas, Omontay Monroe, and Estes Walker (collectively, "Plaintiffs") bring claims against George Junior Republic, George Junior Republic Realty, George Junior Republic in Pennsylvania, George Junior Republic in Indiana, Inc., and John/Jane Does 1-100 (collectively, "Defendants") under Title IX of the Education Amendments of 1972 ("Title IX") and Title 42 of the Civil Rights Act of 1964 ("CRA").

(*See generally* ECF No. 17.)[1] Plaintiffs also allege Pennsylvania state law claims under the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), and tort claims for negligence, gross negligence, reckless and wanton conduct, negligent hiring, negligent retention, negligent supervision, negligent misrepresentations and omissions, vicarious liability, intentional and negligent infliction of emotional distress, and breach of fiduciary duty. (*See generally* ECF No. 17.)

Plaintiffs, all of whom were housed at George Junior Republic facilities, allege that they were sexually assaulted by staff at George Junior Republic in Pennsylvania over two decades. Plaintiffs allege that Defendants "failed to adequately screen, hire, train, and supervise staff," and as a result, "children in George Junior Republic facilities have been reportedly sexually abused." (ECF No. 17 ¶ 6.) Before the Court is Defendants' Motion to Dismiss Plaintiffs' Amended Class Action Complaint ("Motion"). (*See generally* ECF No. 19.) The Court grants in part and denies in part the Defendants' Motion to Dismiss.

## I.    FACTUAL BACKGROUND

George Junior Republic is a custodial facility for the placement of juvenile court-adjudicated youths, aged 8-18, and other at-risk youths. (ECF No. 17 ¶ 67.) George Junior Republic operates custodial detention facilities for juveniles who are adjudicated delinquent in juvenile court proceedings, as well as youth at risk for delinquency or criminal conduct. (ECF No. 17 ¶ 3.) George Junior Republic "offers rehabilitation, education and support services for youth through a trauma-informed approach." (ECF No. 17 ¶ 4.) George Junior Republic also provides certain services including "state-of-the-art living facilities, fully accredited academic and vocational programs, leisure and recreation activities, and a broad continuum of medical care and

---

[1] The Court adopts the pagination supplied by the CM/ECF docketing system.

mental health treatment." (ECF No. 17 ¶ 5 (citing https://gjr.org/about-us/).) George Junior Republic provides "room and board, clothing, behavior management[,] individual and group counseling, academic and vocational programming, medical and dental services, as well as athletic and recreational opportunities." (ECF No. 17 ¶ 11 (citing https://gjr.org/).)

Plaintiffs are all individuals who resided at George Junior Republic in Pennsylvania as juveniles, and each alleges they were sexually assaulted by staff at the facility. Plaintiffs allegedly suffered abuse from as early as 1998 through 2019 and suggest that others may be suffering similar abuse presently. (ECF No. 17 ¶ 49.) Plaintiffs make the following allegations against named staff members: Supervisor Hurshburger sexually assaulted Plaintiff Clark (ECF No. 17 ¶¶ 85-91); Ms. Betty, Mr. Steve, and Mr. Mario sexually assaulted Plaintiff Granger (ECF No. 17 ¶¶ 100-112); Ms. D sexually assaulted Plaintiff Myers (ECF No. 17 ¶¶ 113-118); Ferguson and Adrian Coleman sexually assaulted Plaintiff Webb (ECF No. 17 ¶¶ 119-128); Mr. Rex, Ms. Morgan, and Mr. Burt sexually assaulted Plaintiff Postell (ECF No. 17 ¶¶ 129-137); Matt sexually assaulted Plaintiff Hastings (ECF No. 17 ¶¶ 138-146); Mr. Eric, Mr. Larmone, and Ms. Erika sexually assaulted Plaintiff Berrios (ECF No. 17 ¶¶ 147-155); Ms. Beverly sexually assaulted Plaintiff Albino (ECF No. 17 ¶¶ 156-161); Mr. Preston sexually assaulted Plaintiff Lucas (ECF No. 17 ¶¶ 162-168); Mr. Ernie and Ms. Jackie sexually assaulted Plaintiff Monroe (ECF No. 17 ¶¶ 169-175); and Mr. Scott sexually assaulted Plaintiff Walker. (ECF No. 17 ¶¶ 176-184.)

Plaintiffs also allege claims against corporate defendants George Junior Republic, George Junior Republic Realty, George Junior Republic in Pennsylvania, and George Junior Republic in Indiana. Plaintiffs allege that the Corporate Defendants engaged in the systematic sexual and physical abuse of children in its care. (ECF No. 17 ¶ 74.) Plaintiffs claim that Defendants "trapp[ed] children with their abusers" by limiting contact with the outside world. (ECF No. 17 ¶

69.) Plaintiffs also claim that Defendants did not provide any "clear and safe" mechanism to report abuse and those that did report abuse were disbelieved or retaliated against. (ECF No. 17 ¶ 70.) Defendants are alleged to have been indifferent to the safety and well-being of its residents and patients and failed to act to prevent sexual abuse, allowing a "pervasive culture of abuse" against children and young adults. (ECF No. 17 ¶¶ 78, 79.) Through a failure to adopt adequate policies and procedures, failure to train, negligent supervision and hiring, and acting in extreme disregard for the youth in its care, Plaintiffs allege that Defendants perpetuated sexual abuse within its facilities. (ECF No. 17 ¶¶ 65-84.)

Plaintiffs bring a class action pursuant to Fed. R. Civ. P. 23. The class, at present, is defined as:

> All persons who are currently and/or have previously attended, resided, and/or were court ordered into placement, at any George Junior Republic, juvenile facility, juvenile detention, juvenile placement, and/or holding facility, in any state, Commonwealth, or jurisdiction, and while at any or in connection with any of the Defendants' facility(ies) were subjected to either physical, mental, and/or sexual abuse by any of the named Defendants, and/or their staff members, volunteers, agents, servants, employees, or the like while juveniles, and/or either had their educational opportunities deprived, are having their educational opportunities deprived, and/or are at threat to have their educational opportunities deprived (the "Class").

(ECF No. 17 ¶ 193.)

Plaintiffs are seeking injunctive, equitable, and declaratory relief along with monetary damages including interest and attorneys' fees. (ECF No. 17 ¶¶ 354-55.)

## II.    PROCEDURAL BACKGROUND

Plaintiffs filed a Class Action Complaint on March 10, 2023, against all Defendants. (ECF No. 1.) Plaintiffs filed an Amended Class Action Complaint on June 30, 2023. (ECF No. 17.) Defendants filed this Motion to Dismiss on July 20, 2023. (ECF No. 19.) Plaintiffs responded in opposition to the Motion to Dismiss on August 10, 2023. (ECF No. 22.) Additionally, Defendants

filed a Motion to Strike Plaintiffs' Certificate of Merit on December 18, 2023. (ECF No. 24.) Plaintiffs responded in opposition to the Motion to Strike on December 29, 2023. (ECF No. 25.)

### III.    LEGAL STANDARD

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft* v. *Iqbal*, 566 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible when the plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

In deciding whether a complaint fails to state a claim upon which relief can be granted, the court is required to accept as true all factual allegations in the complaint as well as all reasonable inferences that can be drawn from the complaint. *Jordan* v. *Fox Rothschild, O'Brien & Frankel, Inc.*, 20 F.3d 1250, 1261 (3d Cir. 1994). These allegations and inferences are to be construed in the light most favorable to the plaintiff. *Id.* But, the court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss." *Morse* v. *Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). Plaintiffs cannot prove facts they have not alleged. *Associated Gen. Contractors of Cal.* v. *Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). Thus, "a pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Ashcroft*, 556 U.S. at 678. Rather, a complaint must recite factual allegations enough to raise the plaintiff's claimed right to relief beyond the level of mere speculation. *Id.*

## IV.    DISCUSSION

### i.    *Corporate Defendants*

Plaintiffs have brought claims against George Junior Republic in Indiana and George Junior Republic Realty. Defendants move to dismiss all claims against George Junior Republic in Indiana and George Junior Republic Realty as they are not specifically alleged to have participated in any of the conduct alleged in the Amended Complaint. Furthermore, all of the named Plaintiffs were incarcerated at only George Junior Republic in Pennsylvania. The Court agrees that the Amended Complaint is devoid of any factual allegations by Plaintiffs that specifically mentions George Junior Republic in Indiana or George Junior Republic Realty. Because Plaintiffs have not pled any specific allegations against George Junior Republic in Indiana nor George Junior Republic Realty, all claims against those two entities will be dismissed without prejudice with leave to amend should Plaintiffs wish to do so.

### ii.    *Class Certification*

Defendants argue that the Plaintiffs cannot satisfy the elements of Rule 23 no matter how much discovery is conducted. (ECF No. 19-1, at 19.) Again, the class is currently defined as:

> All persons who are currently and/or have previously attended, resided, and/or were court ordered into placement, at any George Junior Republic, juvenile facility, juvenile detention, juvenile placement, and/or holding facility, in any state, Commonwealth, or jurisdiction, and while at any or in connection with any of the Defendants' facility(ies) were subjected to either physical, mental, and/or sexual abuse by any of the named Defendants, and/or their staff members, volunteers, agents, servants, employees, or the like while juveniles, and/or either had their educational opportunities deprived, are having their educational opportunities deprived, and/or are at threat to have their educational opportunities deprived (the "Class").

(ECF No. 17 ¶ 193.)

Federal Rule of Civil Procedure 23 governs the requirements for a class to be certified for a class action. Fed. R. Civ. P. 23. There are four prongs that must be met for a class to be successfully certified: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. *Id.* Class Action certification is usually a decision to be made when a class moves for class action certification. Defendants argue that Plaintiffs' class allegations should be struck because Plaintiffs will not "satisfy the requirements of Rule 23(a) as to numerosity, commonality, typicality and adequacy of representation." (ECF No. 19 at 18 ¶ 2.) Plaintiffs argue in response that striking class action allegations is premature as Plaintiffs have not filed a motion for class action certification yet. (ECF No. 22, at 1.) The Court agrees with the Plaintiffs. The Defendants' Motion to Strike the Plaintiffs' class action allegations is premature.

"[D]istrict courts within the Third Circuit typically conclude that motions to strike class action allegations filed before plaintiffs move for class certification are premature." *Goode v. LexisNexis Risk & Info. Analytics Grp., Inc.*, 284 F.R.D. 238, 244 (E.D. Pa. 2012); *see also Landsman & Funk PC v. Skinder-Strauss Assocs.*, 640 F.3d 72, 93 n.30 (3d Cir. 2011) (courts should grant pre-discovery motions to dismiss or strike class allegations in rare cases only when the "complaint itself demonstrates that the requirements for maintaining a class action cannot be met."); *Mullen v. Red Lobster Rest., LLC*, 2020 WL 13653526, at *9 (W.D. Pa. 2020) ("Courts routinely reject preemptive motions to strike class allegations except in the rare case."). "It is only when no amount of discovery or time will allow for plaintiffs to resolve deficiencies in class definitions under Rule 23, that a motion to strike class allegations should be granted." *Zarichny v. Complete Payment Recovery Servs., Inc.*, 80 F. Supp. 3d 610, 615 (E.D. Pa. 2015) (internal quotations omitted).

At this time, "Plaintiffs have not had the opportunity to conduct discovery." (ECF No. 22, at 2.) In *Miller v. Glen Mills Schools,* the court "denied [defendant's motion to dismiss and strike plaintiff's class allegations] without prejudice to defendants' right to challenge any future motion for class certification." 2019 WL 6877176, at *5 (E.D. Pa. Dec. 17, 2019). Since there was no discovery, the court determined that the motion to strike was premature stating "the court [could not] determine whether a class of boys who attended Glen Mills and who suffered physical abuse is ascertainable as a Rule 23(b)(3) class." *Id*., at *3. The Court finds the same here. Plaintiffs have sufficiently pled allegations that may give rise to a class action claim under Federal Rule of Civil Procedure 23(a). The Court declines to conduct any analysis of class certification at this time due to the premature nature of the question. Moreover, Defendants have not shown that "no amount of discovery or time will allow for plaintiffs to resolve deficiencies in class definitions under Rule 23." *Zarichny,* 80 F. Supp. 3d at 615.

The Court also notes that the alleged class is not controlling at this point and further discovery may reveal a different class than what has been asserted by Plaintiffs. The Court has the ability to modify and redefine the class, if necessary. *See Gates v. Rohm & Haas Co.*, 265 F.R.D. 208, 234 (E.D. Pa. 2010) ("Pursuant to Rule 23(c), a court has the inherent power and discretion to redefine and modify a class in a way which allows maintenance of an action as a class action.") (internal quotations omitted); *Pelletier v. Endo Int'l PLC,* 338 F.R.D. 446, 478 (E.D. Pa. 2021) ("Courts possess the authority to limit or modify class definitions in order to provide the precision needed for class certification"). The Court, having determined the class action certification is premature, denies the Motion to Strike.

### iii.  Title IX Claim (Institutional Defendants)

Plaintiffs allege that Defendants violated Title IX by creating a hostile culture that heightened the risk of sexual harassment (ECF No. 17 ¶ 213) and by being deliberately indifferent to prior sexual harassment. (ECF No. 17 ¶ 236.) Title IX states that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681. Under Title IX, "recipients of federal funding may be liable for 'subjecting' their students to discrimination." *Davis v. Monroe Cnty. Bd. of Educ.,* 526 U.S. 629, 646-47 (1999).

Defendants move to dismiss this claim because "Defendants are not, and never have been, a school." (ECF No. 19-1, at 1.) Defendants claim George Junior Republic has never had the required Pennsylvania state licensures of "Alternative Education for Disruptive Youth, Licensed Private School, or Licensed Private Academic School." (ECF No. 19-1, at 25.) Instead, Defendants direct children at their facility to the Grove City School District for education. (*Id.*) Plaintiffs respond that George Junior Republic advertises on its website that it has "accredited academic and vocational educational programs." (ECF No. 17 ¶ 8.)

Title IX's application begins with a preliminary question "on whether *the defendant-entity's* questioned program or activity has educational characteristics." *Doe v. Mercy Cath. Med. Ctr.*, 850 F.3d 545, 556 (3d Cir. 2017) (emphasis in original). The Third Circuit has enumerated several different features that may be relevant in determining whether a defendant-entity's program or activity has educational characteristics:

> (A) a program is incrementally structured through a particular course of study or training, whether full- or part-time; (B) a program allows participants to earn a degree or diploma, qualify for a certification or certification examination, or pursue a specific occupation or trade beyond mere on-the-job training; (C) a program

provides instructors, examinations, an evaluation process or grades, or accepts tuition; or (D) the entities offering, accrediting, or otherwise regulating a program hold it out as educational in nature.

*Id.* "Whether a program or activity is sufficiently educational under Title IX is a mixed question of law and fact. When the facts are uncontested, the judge decides the matter. Factual disputes material to her legal conclusions are, however, left for the finder of fact." *Id.*

Plaintiffs allege that "Defendant[s] receive[] federal financial assistance for its education programs and is therefore subject to the provisions of Title IX." (ECF No. 17 ¶ 220.) Per George Junior Republic's website, the Defendants have "accredited academic and vocational educational programs." (ECF No. 17 ¶ 5 (citing https://gjr.org/about-us/).) Thus, the information available at this time suggests to the public and to this Court that Defendants provide some educational programming and education or academic instruction. Hence, this more than suggests that the Defendants meet the definition of educational entity or an entity that has educational characteristics, which thereby requires the Defendants to comply with Title IX. If Defendants fail to comply, Title IX creates exposure to liability.

Specifically, Plaintiffs allege that "George Junior Republic's programs and facilities consist of educational programs including day schools, special education programs, vocational training, therapeutic boarding schools, and residential education programs." (ECF No. 17, at 30.) As Plaintiffs argue, George Junior Republic's website states, "The residential programs include state-of-the-art living facilities, fully accredited academic and vocational educational programs . . ." *About Us*, George Junior Republic, https://gjr.org/about-us/. The Court, at this stage in the proceedings, must take Plaintiffs' alleged facts as true. Therefore, considering that Plaintiffs have alleged that Defendants provide accredited academic and vocational training programs, the Court concludes that there are sufficient factual allegations that the Defendant-entity provides a program

or activity that is educational in nature. Plaintiffs' amended complaint contains "sufficient factual material" necessary for the Court to plausibly believe Defendants are subject to Title IX. As result, Defendants' Motion to Dismiss Plaintiffs' Title IX claims is denied.

### iv. Section 1983 Claims (Institutional Defendants)

Defendants' claim that Plaintiffs have failed to plead a Section 1983 claim because Plaintiffs do not specify "which corporate Defendant is alleged to have failed to provide a safe custodial setting." (ECF No. 19-1, at 27.) Defendants allege that Plaintiffs "have impermissibly lumped Defendants together, failing to specify specific conduct of each individual Defendant." (ECF No. 19-1, at 27.) Plaintiffs allege that they did, in fact, plead personal involvement of the specific Defendants along with the "specific details surrounding the factual background and incidents of abuse." (ECF No. 22, at 11.)  The Court notes that Defendants George Junior Republic Realty and George Junior Republic in Indiana are dismissed from this case. Therefore, the Court will only analyze this argument as it pertains to George Junior Republic and George Junior Republic in Pennsylvania. There are multiple specific claims within Plaintiffs' Amended Class Action Complaint that detail the actions of George Junior Republic and George Junior Republic in Pennsylvania. Thus, the Court is not persuaded by Defendants' argument.

The Defendants seem to argue that there is some sort of heightened pleading standard with regards to claims under Section 1983. (ECF No. 19-1, at 25-26.) However, the Supreme Court and Third Circuit have explicitly rejected the notion that any heightened pleading requirement applies to Civil Rights Claims. *See Loftus v. S.E. Pa. Transp. Auth.*, 843 F. Supp. 981, 984 (E.D. Pa. 1994) ("The Supreme Court noted [in *Leatherman*] that the Federal Rules of Civil Procedure impose a particularity requirement only in two specific instances, fraud or mistake.") (citing *Leatherman v.*

*Tarrant Cnty. Narcotics Intel. and Coordination Unit*, 507 U.S. 163 (1993)). With this in mind, the Court turns to Defendants' argument.

While the Court acknowledges that the Plaintiffs do initially group the Defendants into "George Junior Republic", the "School", and "Defendants", (ECF No. 17 ¶ 1), the Amended Complaint is sufficiently specific to identify which Defendants are responsible for what conduct. First, the individual Defendants are sufficiently identified in the complaint and are separated by name (to the extent those names are available to Plaintiffs pre-discovery). (ECF No. 17 ¶¶ 85-184.) Plaintiff bolds and underlines the specific individual Defendants who are responsible for specific instances of alleged misconduct and which youth is alleged to have been abused by the individual Defendant or Defendants. Second, the Amended Complaint makes clear that the facilities in question are those in Pennsylvania. (ECF No. 17 ¶ 2.) While Plaintiffs, admittedly, could have been clearer on the division of Defendants in the pleading, even a cursory review of the allegations provides sufficient clarity at this point as to which Defendants were responsible for what conduct. For example, Plaintiffs clearly state that "George Junior Republic is responsible for setting and approving all national, organization-wide policies and protocols for George Junior Republic programs and operations, including sex discrimination policies." (ECF No. 17 ¶ 226.) The Plaintiffs are clearly discussing George Junior Republic, a named Defendant.

Furthermore, Plaintiffs' reference to George Junior Republic in Pennsylvania as "[t]he School," does not warrant dismissal of the Section 1983 claims. Plaintiffs claim "[t]he School failed, with deliberate indifference, to provide a safe custodial setting for Plaintiffs and the Class, by failing to properly train, supervise, and discipline the staff at the School, including all John Does." (ECF No. 17 ¶ 259.) The Complaint is clear that the "School" is referring to the George Junior Republic in Pennsylvania. Because the Complaint is sufficiently clear, and there is no

heightened pleading requirement, Defendants' Motion to Dismiss the Section 1983 claims is denied.

v. *Pennsylvania Unfair Trade Practices and Consumer Protection Law (UTPCPL)*

Plaintiffs bring claims under the Pennsylvania UTPCPL. Plaintiffs claim that they "purchased behavioral health treatment services from George Junior Republic." (ECF No. 17, at 47.) In order to state a claim under the UTPCPL, a private individual must establish that they are (1) a purchaser or lessee; (2) the transaction is dealing with goods or services; (3) the good or service was primarily for personal, family, or household purposes; and (4) they suffered damages arising from the purchase or lease of goods or services. *Ranalli v. Etsy.com, LLC*, 570 F. Supp. 3d 301, 305 (W.D. Pa. 2021) (citing *Keller v. Volkswagen of Am., Inc.*, 733 A.2d 642, 646 (Pa. Super. 1999)). Defendants contend that Plaintiffs did not pay for the services, but rather the government paid for Defendants' services. (ECF No. 19-1, at 27 (citing ECF No. 17 ¶ 220).) In support of this argument, Defendants point to the portion of the Amended Complaint stating that "Defendant receives federal financial assistance for its education programs[.]" (ECF No. 17 ¶ 220.) It is entirely possible that an entity both receives federal assistance and also requires payment by individuals to avail themselves of certain services. The fact that an institution receives federal financial assistance does not preclude that same institution from receiving payment for other specific or additional available services. Taking the Plaintiffs' allegations as true, that they *purchased* behavioral health treatment services from Defendant, the Court finds that Plaintiffs were "purchasers" for the purposes of UTPCPL.

Plaintiffs further satisfy the other prongs of a UTPCPL claim, that they purchased (2) services, (3) for personal, family, or household purposes, and (4) suffered damages from that

purchase. Plaintiffs purchased behavioral treatment services from Defendants, for personal use, and allege they suffered extensive damages as a result of that purchase. Due to the sensitive and graphic nature of the damages, the Court will not repeat them in this analysis. However, there are more than sufficient allegations stated in the Complaint, which the Court must take as true, to satisfy a finding of damages.

> vi.   *Negligence, Gross Negligence, Wanton and Reckless Conduct, Negligent Hiring, Supervision, Misrepresentation, and Retention Claims*

Defendants group these tort claims into one paragraph and make a singular argument as to why the claims should be dismissed. (ECF No. 19-1, at 27-30.) Defendants state that Plaintiffs' failure to identify specific employees by name means that Plaintiffs have not adequately pled the grouped negligence causes of action. Defendants cite one case, *Buttermore v. Loans*, to support their position. 2016 WL 308875 (W.D. Pa. 2016). Defendants use this case for the quote: "[a]s with the negligent hiring claim, the initial defect in plaintiff's negligent supervision claim is that he identifies no specific employee or even class of employees, who are alleged to have engaged in conduct giving rise to a particularized duty of supervision." *Id.* However, even taking this statement in a vacuum, this case is factually and legally distinct. Plaintiffs do identify which specific employees engaged in what conduct. While Plaintiffs may not have been able to identify each employee's full legal name, they provide dates, first names when available, last names when available, roles, and the specific conduct they engaged in. Defendants' assertion that they "cannot prepare an adequate defense without being able to identify the employees at issue" is not convincing.

The information provided by Plaintiffs in their pleading is sufficient at this juncture to survive the Defendants' Motion to Dismiss on these claims. Defendants are the employers of the

employees alleged to engage in the misconduct at issue. Defendants are aware of the full legal names of the Plaintiffs, the dates of their housing, and first and last names of the individuals alleged to have engaged in misconduct. Defendants do not indicate that they attempted to look for and were unable to locate the names of the alleged offending individuals. Rather, Defendants are making an unconvincing attempt to have the Court ignore the pleading standard required at the Motion to Dismiss stage, the legal requirements of the tort claims, and instead focus on Plaintiffs inability to provide full legal names who, without discovery, are presumably within the sole possession of Defendants.

### vii. *Vicarious Liability*

Plaintiffs have asserted vicarious liability claims against George Junior Republic and George Junior Republic in Pennsylvania for the actions of their employees. (ECF No. 17, at 49.) While the general rule is that "sexual harassment by a supervisor [or employee] is not conduct within the scope of employment[,] [s]cope of employment does not define the only basis for employer liability under agency principles." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 757-58 (1998). "In limited circumstances, agency principles impose liability on employers even where employees commit torts outside the scope of employment." *Id.* These principles are set out in Section 219(2) of the Restatement (Second) of Agency:

> (2) A master is not subject to liability for the torts of his servants acting outside the scope of their employment, unless:
> (a) the master intended the conduct or the consequences, or
> (b) the master was negligent or reckless, or
> (c) the conduct violated a non-delegable duty of the master, or
> (d) the servant purported to act or to speak on behalf of the principal and there was reliance upon apparent authority, or he was aided in accomplishing the tort by the existence of the agency relation.

Specifically, Section 219(2)(d) "concerns vicarious liability for intentional torts committed by an employee when the employee uses apparent authority (the apparent authority standard), or when

the employee was aided in accomplishing the tort by existence of the agency relation." *Burlington Indus.*, 524 U.S. at 759 (citation omitted). "When a party seeks to impose vicarious liability based on an agent's misuse of delegated authority, the Restatement's aided in the agency relation rule, rather than the apparent authority rule, appears to be the appropriate form of analysis." *Id.* at 759-60.

Plaintiffs do not allege that any of the employee-Defendants used apparent or false authority; rather they allege that the employee-Defendants misused their delegated authority to commit acts of sexual misconduct. As a result, the Court analyzes the vicarious liability of the employer-Defendants through the aided in agency relation rule. The Third Circuit has interpreted the Restatement Rule on vicarious liability to apply to employees committing acts against non-employees. *See Yucis v. Sears Outlet Stores, LLC*, 813 F. App'x 780, 786 (3d Cir. 2020). "[F]or an employee to be aided by his employment in committing a wrongful act, he must have taken advantage of some special mechanism afforded to him by his employment. . . . Or the employment must have provided the employee a position of special authority making the victim particularly vulnerable to the wrongful act." *Id.*

Defendants argue that to establish vicarious liability, a plaintiff must satisfy the standard test for vicarious liability: that "the employee's conduct (1) is of a kind and nature that he or she is employed to perform; (2) occurs substantially within the authorized time and space limits designated by his employer; and (3) is driven by a desire to serve the employer." (ECF No. 19-1, at 30 (citing *Costa v. Roxborough Mem'l Hosp.*, 708 A.2d 490, 493 (Pa.Super.Ct.1998)).) Both the Supreme Court and Third Circuit have interpreted the Restatement (Second) of Agency principles related to vicarious liability, in extraordinary circumstances, to apply to situations not explicitly within the scope of employment. *See Burlington Indus.*, 524 U.S. at 759; *Yucis*, 813 F.

App'x at 786 (holding that an employer can be liable for their employee if the employee took advantage of some special mechanism afforded to him by his employment or the employment provided the employee a position of special authority making the victim particularly vulnerable to the wrongful act.) Based on current law, the Court concludes that there are two scenarios in which an employer may be liable for the conduct of their employee even when the misconduct of the employee is not driven by a desire to serve the employer. First, an employer may be liable for the actions of their employee when the employee takes advantage of some *special mechanism* afforded to them by their employment. *See Yucis*, 813 F. App'x at 786. Second, whenever the employer provided the employee with a position of *special authority*, making the victim particularly vulnerable to the wrongful act. *Id*. The Court finds both of these to be true in the present case.

First, Plaintiffs allege sufficient facts in their Amended Complaint to show that the employees of Defendant George Junior Republic allegedly used (and abused) their positions of authority over minor children within the exclusive care of Defendants. Specifically, they allege that the employees were given special mechanisms by George Junior Republic and they abused those mechanisms. Employee-defendants were given special access to children, who were placed as delinquent youth to live at the facility without their parents. Employee-defendants were also given the opportunity to schedule various types of appointments which would involve one-on-one interaction with a juvenile. Those employees then allegedly misused those mechanisms, given to them by George Junior Republic, to sexually abuse children within their care. Plaintiffs have valid claims under the first exception recognized by the Third Circuit in *Yucis*. 813 F. App'x 780, 786 (3d Cir. 2020).

Second, Plaintiffs sufficiently plead that their employment provided employees with special authority that made the victims vulnerable to the wrongful acts. Again, Plaintiffs allege

that the employees of Defendants had the opportunity to be in close proximity to the minor children and allowed them to render care to them. Plaintiffs, juvenile children housed at George Junior Republic, were extremely vulnerable to the authoritative figures present at the facility. These minor children were under the care and supervision of George Junior Republic and employees of George Junior Republic took advantage of their supervisory role and the trust and care relationship they were expected to provide. For these reasons, the Court finds that there are sufficient allegations pled in the Amended Complaint for the vicarious liability claim to survive.

> viii.   *Intentional Infliction of Emotional Distress*

In order for a claim of intentional infliction of emotional distress ("IIED") to be sustained, Plaintiffs must show that Defendants (1) engaged in extreme and outrageous conduct and (2) intentionally or recklessly (3) caused severe emotional distress to another. *Mantua Cnty. Planners v. City of Phila.*, 2016 WL 3227643, at *10 (E.D. Pa. 2016) (citing *Manley v. Fitzgerald*, 997 A.2d 1235, 141 (Pa. Commw. Ct. 2010)). Liability for IIED arises "where the conduct has been *so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized society.*" *Strickland v. Univ. of Scranton*, 700 A.2d 979, 987 (Pa. Super. Ct. 1997) (emphasis in original) (quoting *Small v. Juniata Coll.*, 682 A.2d 350, 355 (Pa. Super. Ct. 1996)). Defendants claim that Plaintiffs have failed to allege facts sufficient to demonstrate that Defendants' conduct was outrageous or extreme. (ECF No. 19-1, at 32.) Defendants also claim that the allegations are merely conclusory. (*Id.*) The Court disagrees.

Plaintiffs have detailed, extensively, in a 357-paragraph Amended Complaint, the alleged conduct that employees of George Junior Republic have engaged in. This conduct, as described, is of such an outrageous nature, and extreme in degree, that the Court need not repeat it in detail

in this Opinion. (*See generally* ECF No. 17.) However, the Court finds that the Amended Complaint sufficiently details extensive alleged sexual abuse of children under the care of George Junior, which went on for decades. Taking the allegations in the Amended Complaint as true, the fact that this behavior was arguably prevalent at George Junior for such a reportedly lengthy amount of time, without any repercussion for the employees, is repulsive. The Court finds that the reported conduct engaged in, as pled, was extreme, that George Junior was at least reckless in allowing such behavior to persist for decades, and the Amended Complaint sufficiently details the severe emotional distress that this has caused Plaintiffs. Thus, Plaintiff has adequately pled a claim for IIED.

### ix. *Breach of Fiduciary Duty*

In order to allege a breach of fiduciary duty, Plaintiffs must assert that a "fiduciary or confidential relationship existed between themselves and [d]efendants." *Reese v. Pook & Pook, LLC.*, 158 F. Supp. 3d 271, 298 (E.D. Pa. 2016) (internal citations omitted). After a plaintiff adequately pleads that such a relationship exists, a plaintiff must show that (1) the defendants negligently or intentionally failed to act in good faith and solely for the benefit of plaintiffs in all matters for which they are employed; (2) plaintiffs suffered injury; and (3) the defendant's failure to act solely for the plaintiff's benefit was a real factor bringing about plaintiff's injuries. *Id.* "Although no precise formula has been devised to ascertain the existence of a confidential relationship, it has been said that such a relationship exists whenever one occupies toward another such a position of advisor or counselor as reasonably to inspire confidence that he will act in good faith for the other's interest." *Id.* (internal citation omitted).

Defendants argue that Plaintiffs have not alleged any counselor or advisor relationship between the parties. Defendants also state that they have been unable to locate a case where a

juvenile detention center or correctional facility owed a fiduciary duty to detained persons. Plaintiffs respond that a confidential relationship can be found where one party "has reposed a special confidence in each other to the extent that the parties do not deal with each other on equal terms" and "can result from 'an overmastering dominance on one side, or weakness, dependence, or justifiable trust, on the other.'" (ECF No. 22, at 18 (citing *Harold v. McGann*, 406 F. Supp. 2d 562, 571 (E.D. Pa. 2005).) Furthermore, Plaintiffs allege that "[a]lthough no precise formula has been devised to ascertain the existence of a confidential relationship, it has been said that such a relationship exists whenever one occupies toward another such a position of advisor or counselor as reasonably to inspire confidence that he will act in good faith for the other's interest." (ECF No. 22, at 18 (citing *Reese v. Pook & Pook LLC*, 158 F. Supp. 3d 271, 298 (E.D. Pa. 2016)).)

While there is not test for determining whether a fiduciary duty exists, the Pennsylvania Supreme Court has laid out the following contours:

> A fiduciary duty is the highest duty implied by law. A fiduciary duty requires a party to act with the utmost good faith in furthering and advancing the other person's interests.... This highest duty will be imposed only where the attendant conditions make it certain that a fiduciary relationship exists.
> In some types of relationships, a fiduciary duty exists as a matter of law. Principal and agent, trustee and *cestui que* trust, attorney and client, guardian and ward, and partners are recognized examples.... Where no fiduciary duty exists as a matter of law, Pennsylvania courts have nevertheless long recognized the existence of confidential relationships in circumstances where equity compels that we do so. Our courts have found fiduciary duties in circumstances where the relative position of the parties is such that the one has the power and means to take advantage of, or exercise undue influence over, the other. The circumstances in which confidential relationships have been recognized are fact specific and cannot be reduced to a particular set of facts or circumstances. We have explained that a confidential relationship appears when the circumstances make it certain the parties do not deal on equal terms, but, on the one side there is an overmastering influence, or, on the other, weakness, dependence or trust, justifiably reposed.

*Yenchi v. Ameriprise Fin., Inc.*, 161 A.3d 811, 819-21 (Pa. 2017). Plaintiffs argue that the Court should hold that confidential relationships should include that of juvenile detention center

employees and students within their custody. However, that relationship is not fiduciary in nature. The Pennsylvania Supreme Court did not recognize the existence of a therapist-patient or even doctor-patient relationship as evidence of a fiduciary relationship. The Court in *Yenchi* specifically uses the word "deal" to contextualize the fiduciary relationship. *Id.* Breach of fiduciary duty claims usually arise within the context of a business transaction, where a duty is created through a *financial* relationship, the benefit of which is some sort of exchange or management of monies or services related to business or personal affairs management. *See, e.g., Puente v. Navy Fed. Credit Union*, 2025 WL 408677 (E.D. Pa. 2025); *Gen. Refractories Co. v. Liberty Mut. Ins. Co.*, 1999 WL 1134530 (E.D. Pa. 1999); *Alpart v. Gen. Land Partners, Inc.*, 2008 WL 3852256 (E.D. Pa. 2008); *Health Robotics, LLC v. Bennett*, 2009 WL 5033966 (E.D. Pa. 2009).

The Court is unable to locate a case where a fiduciary or confidential relationship, for breach of fiduciary duty purposes, existed between parties similar to those in the present case. Plaintiffs cite two cases which discuss confidential or fiduciary relationships through power imbalances, but they both have to do with financial relationships, as opposed to a medical, educational, or punitive relationship like those in the present case. *See Reese v. Pook & Pook LLC*, 158 F. Supp. 3d 271, 298 (E.D. Pa. 2016) (discussing a breach of fiduciary duty claim within the context of duties owed in an auction of toys); *Harold v. McGann*, 406 F. Supp. 2d 562, 571 (E.D. Pa. 2005) (discussing a contract dispute).[2] Considering the guidance of the Supreme Court, the cases in this Circuit regarding fiduciary duty, and the lack of other cases indicating otherwise, the Court finds that there is no fiduciary duty or confidential duty within the context of a Breach of Fiduciary claim that exists in the present case. Plaintiffs' claim for breach of fiduciary duty is, therefore, dismissed.

---

[2]    In both the cases cited by Plaintiffs, the breach of fiduciary duty claims were dismissed. *See Reese v. Pook & Pook LLC*, 158 F. Supp. 3d 271, 298 (E.D. Pa. 2016); *Harold v. McGann*, 406 F. Supp. 2d 562, 571 (E.D. Pa. 2005).

*x.  Injunctive Relief*

Plaintiffs seek injunctive relief for the class to prevent future harms. Defendants claim that because Plaintiffs are not current students at George Junior Republic and that the claims are based on past injuries, that the claims for injunctive relief should be stricken. Plaintiffs argue that because Defendants have engaged in actions that apply to the class in general, injunctive relief is appropriate. (ECF No. 22, at 20 (citing Fed. R. Civ. P. 23(b)(2)).)

Plaintiffs may proceed with a class for injunctive and/or declaratory relief "if the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." *Derrick v. Glen Mills Sch.*, 2019 WL 7019633, at *9-10 (E.D. Pa. 2019) (citing Fed. R. Civ. P. 23(b)(2)).[3] "To determine whether plaintiffs have standing to seek injunctive relief, we consider whether they can 'show that they are likely to suffer from injury from the defendant's conduct.'" *Id.* (citing *Richardson v. Bledsoe*, 829 F.3d 273, 278 (3d Cir. 2016)). Because the class at issue includes "[a]ll persons who are *currently* . . . at any George Junior Republic [facility]," and taking all allegations as true, the Court concludes that there is risk of future injury, therefore, the injunctive relief claims shall not be stricken. If at any point the class is amended to exclude current students, Defendants reserve the right to re-assert their objection to injunctive relief.

*xi.  Writ of Mandamus*

Plaintiffs seek a writ of mandamus against Defendants to report all child abuse presently known or suspected by them, and to submit proof of compliance with such order to the Court within ten (10) days of such order. (ECF No. 17, at 57.) A District Court may issue a writ of

---

[3]    The Court in *Derrick* granted Defendant Glen Mills Schools' Motion to Dismiss class action allegations under Rule 23(b)(2) (injunctive relief) but only on the grounds that Glen Mills Schools was closed at the time of Judge Bartle's decision and, therefore, the reopening of Glen Mills Schools was too speculative to justify allowing injunctive relief claims to survive.

mandamus when it is "necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a); *In re Baldwin*, 700 F. 3d 122, 126-27 (3d. Cir. 2012). A writ of mandamus is only available in "exceptional circumstances." *Baldwin*, 700 F.3d at 126 (citing *Will v. United States*, 389 U.S. 90, 95 (1967)). Ordinarily, a writ is issued only "to confine inferior courts to their lawful jurisdiction or to compel them to exercise authority when they have a duty to do so." *Id.* (citing *De Masi v. Weiss*, 669 F.2d 114, 117 (3d Cir. 1982)).

Plaintiffs claim that aside from this Court issuing a writ of mandamus, "there is a lack of alternative means to obtain this information and to obtain relief for children who were abused." (ECF No. 22, at 20.) The Court disagrees. At this point in time, the Court is reluctant to issue a writ of mandamus, usually used to compel inferior courts or the government to do something, to order a juvenile detention center to disclose documents; Hence, the Court will not do so in this instance. The Court, at this time, believes that there are other alternative means to obtain this information through normal discovery processes. Considering these two factors, the Court rejects Plaintiffs' request and will not issue a writ of mandamus.

## V.    CONCLUSION

The Court will grant Defendants' Motion to Dismiss as to George Junior Republic in Indiana and George Junior Republic Realty as to all claims. George Junior Republic in Indiana and George Junior Republic Realty are dismissed from this case. The Court will grant Defendants' Motion to Dismiss as to George Junior Republic and George Junior Republic in Pennsylvania as to the breach of fiduciary duty claim (Count 13) and request for a writ of mandamus only. The Court denies Defendants' Motion to Dismiss as to all other claims (Counts 1-12, 14). An appropriate order will follow.

**BY THE COURT:**

**/s/ Hon. Kelley B. Hodge**

_____

   **HODGE, KELLEY B., J.**